555 P.2d 330

**STATE of Arizona, Appellee,**

v.

**Michael Lemon McGUIRE, Appellant.**

No. 3338.

Supreme Court of Arizona,
En Banc.

Sept. 22, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Toby M. Gerst, Phoenix, for appellant.

HAYS, Justice.

Appellant was charged by information with three counts of sale of a narcotic drug, to wit, heroin. He was also charged, by amended information, with a prior felony conviction, in order to enhance the penalty should he be convicted. He was convicted by a jury of the three sale counts, and after having waived the jury on the prior felony issue, was convicted of that charge by the trial judge. He was sentenced on October 27, 1975 to ten years to life on all three counts, sentences to run consecutively. We have jurisdiction of the appeal pursuant to the Arizona Constitution, article 2, § 24, article 6, § 5, and A. R.S. §§ 13–1711 and 12–120.21(A)(1).

Appellant was charged with selling heroin to two Phoenix undercover police officers, Andrade and Garcia, on three different days in October of 1974. Both officers identified appellant at trial after describing their encounters with him on the three occasions in question. All three sales occurred during daylight hours, with the officers remaining in their car and the appellant coming over to them to make the sales.

During cross-examination, Officer Andrade was asked if he had ever been wrong about an identification in a narcotics case. He answered that he had been, but only once. Counsel for defense later questioned Officer Andrade about another case, which we will refer to here as the Gongora case. Both Officer Andrade and Officer Garcia worked together on the Gongora case, also. Defense counsel asked Officer Andrade if there was a case of mistaken identity in Gongora. The officer answered that there was not.

At this point, defense counsel sought leave to use a memorandum from the court's files in the Gongora case to refresh Officer Andrade's recollection. The memorandum had been made by the prosecuting attorney in the Gongora case after a telephonic communication from someone in the Phoenix Police Department to him. The memo indicated the possibility of a mistaken identification in the case by the two officers.

Officer Andrade denied the statement was his, denied ever making any such telephonic communication and denied, again, having made a mistaken identification in the Gongora case.

The defense counsel offered the memo in evidence. The state's objection to the offer was sustained.

Again, on cross-examination of Officer Garcia, the court allowed defense counsel to question with regard to whether or not Garcia ever called the County Attorney's Office about a mistaken identification in the Gongora case. The officer admitted the phone call and admitted telling the prosecutor there was a possibility of mistaken identification. On re-cross-examination there was further examination into this issue.

Appellant now claims it was reversible error to deny him the right to impeach prosecution witnesses by admission into evidence of the memorandum from the Gongora case file.

■ We hold that it was not error to disallow the introduction of the memo into evidence and the appellant was not denied his right to effective cross-examination of the police officers thereby.

■ "No contradiction . . . shall be permitted on collateral matters. . . ." 3A Wigmore, *Evidence* § 1003 (Chadbourn rev. 1970). The test to determine whether or not evidence is collateral is " . . . could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" Wigmore, *supra*; *State v. Mangrum*, 98 Ariz. 279, 403 P.2d 925 (1965).

Defense counsel had already been permitted to fully cross-examine the officers on the possibility of a mistaken identity in the other, unrelated case. One officer denied it and one admitted it. There was no legal reason to admit the memo except to

contradict the officer who denied. The memo, therefore, coming under the rule just quoted, was inadmissible collateral evidence and the trial court ruled correctly regarding it. The control of cross-examination is left to the sound discretion of the trial court and will not be disturbed on appeal in the absence of a showing from the record of an abuse thereof. *State v. Hunter*, 111 Ariz. 23, 523 P.2d 51 (1974); *State v. Thomas*, 110 Ariz. 106, 515 P.2d 851 (1973).

The second question raised on appeal is whether an answer to a question on direct examination by Officer Garcia was so improper as to require reversal.

Over defense counsel's objections, the prosecutor asked Officer Garcia:

"Q. How many times had you seen the defendant before . . . the eighth of October, 1974?

"A. I used to work in that area.

"Q. Answer the question please.

"A. Quite a few times; I don't recall the exact number.

"Q. How long previous to the October 8, 1974 date was the first time you recall ever having seen the defendant?

"A. I would say three or four years."

It is contended that this line of questioning and the answers imply prior bad acts on the part of the appellant, contrary to *State v. Kellington*, 93 Ariz. 396, 381 P.2d 215 (1963), and *State v. Gortarez*, 98 Ariz. 160, 402 P.2d 992 (1965). We do not find either of those cases controlling. In *Kellington* there was direct reference by the policeman testifying to the defendant's prior felony conviction. In *Gortarez* the court found that the testimony taken as a whole showed a police officer's testimony as not referring at all to the defendant therein, but to some other person.

What we do find controlling in this case is *State v. Finn*, 111 Ariz. 271, 528 P.2d 615 (1974), wherein it was said:

"We do not believe . . . that taken in the context of the trial before us, that the statements necessarily indicate that the defendant has a prior record or has had previous trouble with the police. Policemen do know people other than criminals and given the size of the community in the instant case . . . [Phoenix] . . . it is just as reasonable to assume that the officer's prior contact with the defendant was not as the result of any prior bad acts or criminal conduct on the part of the defendant himself. . . ." *State v. Finn*, 111 Ariz. 271, 278–79, 528 P.2d 615, 622.

As we said in *Finn*, we wish the questions had not been asked, nor the answers given, but we find no prejudice or reversible error in them.

The third and last question presented on appeal is whether appellant was improperly convicted of a prior felony based upon inadmissible hearsay evidence.

In Arizona, the state bears the burden of proving a prior conviction of the defendant and of proving it was indeed the defendant who was previously convicted. *State v. Biscoe*, 112 Ariz. 98, 537 P.2d 968 (1975).

In this case, appellant waived his right to be tried by the jury on the issue of whether or not he had ever been convicted of another felony, and the issue was tried by the judge instead. The state was alleging that appellant had been convicted on December 7, 1970, in the Superior Court of Maricopa County, State of Arizona, of the offense of possession of LSD.

To prove this charge the state presented to the trial judge the appellant's records from the Arizona State Prison in Florence, Arizona. The records, however, were not certified records, but *copies* of certified records, instead. A fingerprint expert took one of appellant's prints, during this hearing, and compared it to the prints in these copied records, thus allegedly identifying appellant as the person who was, indeed, convicted.

Rule 19.3(a) of the Rules of Criminal Procedure, 17 A.R.S., says: "The law of

evidence relating to civil actions shall apply to criminal proceedings, except as otherwise provided." We therefore refer to 16 A.R.S., Rules of Civil Procedure, rule 44(b), the controlling rule in this instance. It states:

"44(b) *Copies of documents filed with state and county officers.* Certified copies of documents authorized to be filed with state and county officers shall be received in evidence as the originals may be received."

"Certified copies" cannot and does not mean *copies* of certified copies. The admission of them into evidence, and the use thereof by the fingerprint expert amounted to erroneous use of hearsay evidence to convict appellant of the prior felony.

Therefore, we reverse the conviction of the prior felony and remand the case for a new trial on that charge. If the defendant is found guilty of the prior conviction, the sentence will stand affirmed; otherwise, the trial court must resentence.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.